**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**

**KINGSTON ANSAH,**

**Defendant.**

**1:17-cr-381-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Kingston Ansah's ("Defendant") Motion to Revoke Magistrate's Order Detaining Defendant [27], which the Court considers as Defendant's appeal of Magistrate Judge Janet F. King's November 29, 2017, Order of Detention Pending Trial [11].

## I.    INTRODUCTION

On November 7, 2017, Defendant was charged with one count of conspiring to commit wire fraud, in violation of 18 U.S.C. § 1349, ten counts of wire fraud, in violation on 18 U.S.C. §§ 1343, 1349 and 2, ten counts of access device fraud, in violation of 18 U.S.C. § 1029(a)(2) and 2, ten counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (2), and five counts of money laundering, in violation of 18 U.S.C. §§ 9957 and 2.  (Indictment [1]).  The charges

arise from an alleged scheme to use credit cards obtained by using the means of identification of third party victims, to make fraudulent purchases and submit claims for fraudulent charges on the credit cards obtained using identification of third party victims. Many of the fraudulent charges were for services purportedly rendered by two of Defendant's companies. ([1] at 5). After these charges were returned, investigative activity made Defendant aware he was under investigation and he retained counsel who discussed with the Government the possible resolution of Defendant's alleged conduct. When these discussions were unsuccessful, Defendant was indicted. Defendant's counsel was notified of the indictment and Defendant was given an opportunity to self-surrender. Defendant's counsel advised the Government that Defendant became ill around the time of the original surrender date, and the Government extended the surrender date to November 20, 2017.

Sometime before November 20, 2017, the Government learned that Defendant bought an airline ticket for travel to the Netherlands with a departure date of November 19, 2017, the day before he was to self-surrender. Before Defendant could leave the country, he was arrested. The arrest was made while Defendant was sitting at the gate for his flight to the Netherlands. The

Government later learned that Defendant had a ticket on a flight from the Netherlands to his home country of Ghana.

Defendant had checked three large pieces of luggage for his trip out of the United States. These bags were later searched. In them, agents found an international driver's license in the name of Peter Weems with a home address used on other fraudulent licenses. The Weems driver's license had the same address used on four fraudulent driver's licenses found during a previous search of Defendant's business.[1] A letter seized from the luggage had another person's name with Defendant's home address. The luggage also contained 20 pieces of dry cleaned clothing and eight pairs of shoes.

Defendant denied he was fleeing the United States, but instead asserted he was going to Ghana to attend his mother's funeral. He claimed he was able to check three free bags on his international flight and that he packed them with things he was taking to others in Ghana. Defendant's brother provided a declaration that their mother had died and, as the eldest son, Defendant was needed to attend to her burial. A letter certification of his mother's death also was

---

[1] There were previous searches of Defendant's business at which agents seized multiple false driver's licenses, each bearing the same photograph, three Social Security cards with Defendant's name, multiple packets of information listing stolen identities of identity theft victims, and hundreds of thousands of dollars.

admitted.  Defendant did not state why he did not tell the Government he would not self-surrender on November 20, 2017.

The Magistrate Judge granted the Government's Motion to Detain Defendant on the grounds that he is a flight risk and safety risk.  Defendant objects to, and effectively appeals, the Magistrate Judge's Order of Detention, and moves for a *de novo* hearing.

## II.   DISCUSSION

A.   <u>Legal Standard</u>

Under 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge may seek prompt review of the detention order in district court.  The district court's review is *de novo*.  <u>See</u> <u>United States v. Jeffries</u>, 679 F. Supp. 1114, 1115 (M.D. Ga. 1988) (citing <u>United States v. Gaviria</u>, 828 F.2d 667, 670 (11th Cir. 1987)).  In conducting the review, the district court may rely entirely on the pleadings and the evidence developed at the magistrate judge's detention hearing, or it may conclude that additional evidence is necessary and conduct its own evidentiary hearing.  <u>United States v. King</u>, 849 F.2d 485, 490 (11th Cir. 1988).

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial.  The government bears the burden of establishing that the defendant should be detained, either by a preponderance of the evidence that the

defendant poses a high risk of flight, or by clear and convincing evidence that the defendant constitutes a danger to certain individuals and to the community.

United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir. 1990). Section 3142(g) provides the following factors that a court shall consider in determining whether a person poses a flight risk or a danger to the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . [or involves] a controlled substance . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

First, having considered the transcripts of the November 22, 2017, and November 29, 2017, evidentiary hearings on the Government's Motion for

Detention [6], the Court determines a further hearing is not necessary.[2]  Second,

the evidence here substantially supports that Defendant continue to be detained.

Defendant was well aware that he was under investigation, was advised he had

been indicated, was offered the opportunity to self-surrender, and was even

allowed to change his self-surrender date to November 20, 2017, because an illness

which he reported made it hard to surrender on the date originally set.

Defendant claims he was told that his mother died and thus he independently

decided to leave the United States for Ghana the day before he was to surrender.

In preparing to leave the United States, Defendant had time to make his travel

arrangements, gather various items to pack in three large suitcases, including

packing twenty dry cleaned pieces of clothing and eight pairs of shoes.  On the day

of his flight, Defendant was found sitting in the gate area waiting for his flight out

of the country.  Defendant notes that the items he gathered and packed were

unidentified things to transport to Ghana for distribution to unnamed individuals.

As a frequent traveler, Defendant claims he was allowed to take three large bags

for free on his flight.  Not knowing what specifically was packed in the suitcases,

but assuming they were items for people in Ghana, the Court notes that Defendant

had time to collect and pack these extraneous items before his planned departure,

---

[2]    In view of this finding, Defendant's request for a *de novo* hearing is denied.

but he did not have time to let the Government know he did not intend to surrender on November 20, 2017.

The facts here compel the conclusion that Defendant is a flight risk. The conclusion is supported by at least a preponderance of the evidence. Defendant was indicted on serious felony offenses and the Government advised him that he could self-surrender. Defendant told the Government that he was ill and requested an extension of the self-surrender date. Rather than arrest him while ill, the Government told Defendant that he could surrender on November 20, 2017. During the interim period, Defendant purchased a ticket for overseas travel to Ghana through the Netherlands, packed at least three large suitcases, including with things he purchased or gathered, or both, to transport to Ghana and, on November 19, 2017, sat in the passenger lounge, waiting to board his flight out of the United States. He had in his luggage a valid international driver's license in the name of another person. He packed a large number of dry-cleaned items and other clothing. During the time he prepared to leave, however, Defendant made no effort to tell the Government that he made arrangements to depart the country the day before he was required to surrender.

These facts and the failure to tell the Government that he had arranged to leave the country and not surrender on November 20, 2017, discredits Defendant's

claim that he was traveling to attend to his mother's estate and planned to return to the United States. If this were true, Defendant would have contacted the Government to request a further extension of the surrender time. Defendant faces serious felony charges that carry a significant possibility of incarceration. He is charged with the acquisition of other persons' identities for the purposes of fraud. Defendant has very close family members in Ghana, including his father. In short, Defendant is a significant flight risk and his detention is necessary and proper.[3]

Having applied the Section 3142(g) factors to the record in this case, including the transcripts of and the evidence presented at the November 22, 2017, and November 29, 2017, evidentiary hearings, the Court concludes that the Government has proved by a preponderance of the evidence that Defendant is a flight risk. The Government further has proved that no condition or set of conditions will reasonably assure that Defendant will be present at trial. See 18 U.S.C. § 3142(f).

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Revoke Magistrate's Order Detaining Defendant [27] is **DENIED**.

---

[3]      Because the Court finds substantial support that Defendant is a flight risk, it is not necessary to consider whether he is a risk to the community's safety.

**SO ORDERED** this 9th day of February, 2018.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE